# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# GREENVILLE DIVISION

| | |
|---|---|
| Carolina Underground Solutions, LLC, a South Carolina Limited Liability Company, ) ) ) | Civil Action No. 6:17-cv-01563-JMC |
| Plaintiff and Counter-Defendant, ) ) | |
| v. ) ) | |
| Commercial Finance Partners, LLC, a Nevada Limited Liability Company, ) ) ) | |
| Defendant and Counter-Claimant. ) ) | **ORDER AND OPINION** |
| Commercial Finance Partners, LLC, a Nevada Limited Liability Company, ) ) ) ) | |
| Counter-Claimant and Counter-Defendant, ) ) | |
| v. ) ) | |
| Jonathan Carawan, an individual, ) ) | |
| Counter-Claimant and Counter-Defendant. ) ) | |

Plaintiff Carolina Underground Solutions, LLC ("Plaintiff" or "CUS") filed the instant action against Defendant Commercial Finance Partners, LLC ("Defendant" or "CFP") seeking damages resulting from Defendant's allegedly improper business practices. (ECF No. 1-1 at 4–14.)

This matter is before the court by way of Defendant's Motion to Transfer Venue to the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). (ECF No. 10 at 1.) Plaintiff opposes Defendant's Motion in its entirety. (ECF No. 24.) For the reasons set forth below, the court **GRANTS** Defendant's Motion to Transfer Venue.

## I. RELEVANT BACKGROUND TO PENDING MOTION

Plaintiff is a provider of boring and drilling services and it alleges that it "attempted to

enter into an agreement whereby Defendant would provide accounts receivable factoring services." (ECF No. 1-1 at 5 ¶¶ 7, 9.) Plaintiff alleges that although their initial attempt at entering a signed written agreement failed, the parties did agree to an arrangement that resulted in Defendant providing accounts receivable factoring services for and on behalf of Plaintiff from December 13, 2016, until April 7, 2017. (Id. at 5 ¶ 10–6 ¶ 13.) Plaintiff alleges that on April 7, 2017, it sent a notice terminating the performance of Defendant's services which should have ended the parties' relationship. (Id. at 6 ¶¶ 13–14.) However, Defendant allegedly did not cease accessing the accounts Plaintiff maintained for its customers and engaged in numerous instances of improper business practices to include accepting payment without authorization, recording a UCC lien against Plaintiff's property, and failing to remit funds to Plaintiff. (Id. at 7 ¶ 18–8 ¶ 25.)

On June 8, 2017, Plaintiff filed a Complaint against Defendant in the Greenville County (South Carolina) Court of Common Pleas alleging state law claims for tortious interference with existing economic relationships, conversion, slander of title, and violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10 to -560 (2014). (ECF No. 1-1 at 9 ¶ 29–10 ¶ 56.) On June 14, 2017, Defendant removed the matter to this court pursuant to 28 U.S.C. § 1332 (ECF No. 1) and then on June 29, 2017, filed the instant Motion to Transfer Venue. (ECF No. 10.) Plaintiff filed a Response in Opposition to the Motion to Transfer Venue on July 13, 2017, to which Defendant filed a Reply Memorandum in Support of Motion to Transfer Venue on July 19, 2017. (ECF Nos. 24 & 27.) Additionally, on August 17, 2017, Plaintiff moved to file and filed supplemental materials in opposition to Defendant's Motion to Transfer Venue. (ECF Nos. 40, 40-1 & 40-2.)

## II.    JURISDICTION

The court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1332, based on Defendant's allegations that the parties are citizens of different states and the amount in controversy exceeds $75,000.00.  (ECF No. 1 at 3 ¶ 7–4 ¶ 9.)  Specifically, Plaintiff "is a limited liability company organized and existing under the laws of the State of South Carolina, with a principal place of business located in Greenville County, South Carolina."  (ECF No. 1-1 at 4 ¶ 2.)  Defendant "is a limited liability company organized and existing under the laws of the State of Nevada, with a principal place of business located in the State of Florida."  (Id. at 5 ¶ 3.)  Additionally, the court is satisfied that the amount in controversy exceeds $75,000.00.  (ECF Nos. 1 at 4 ¶ 9 & 1-1 at 13 ¶ 55.)

## III.    LEGAL STANDARD

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  Id.  "The appropriate venue of an action is a procedural matter that is governed by federal rule and statutes."  Albemarle Corp. v. AstraZeneca UK Ltd., 628 F.3d 643, 651 (4th Cir. 2010) (citing Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1391; 28 U.S.C. § 1406(a)).  "Whether a case should be transferred to an alternative venue rests within the sound discretion of the district court."  Sw. Equip., Inc. v. Stoner & Co., Inc., C/A No. 6:10-1765-HMH, 2010 WL 4484012, at *2 (D.S.C. Nov. 1, 2010) (citing In re Ralston Purina Co., 726 F.2d 1002, 1005 (4th Cir. 1984)).

"In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion (or a forum non conveniens motion) must evaluate both the convenience of the

parties and various public-interest considerations."[1] Atl. Marine Constr. Co. v. U.S. Dist. Ct. W.D. Tex., 134 S. Ct. 568, 581 (2013). However, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." Id. "[A] valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum[,]'" should be "'given controlling weight in all but the most exceptional cases.'" Id. (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 31 & 33 (1988)).

A court conducts a two-part analysis in deciding whether to enforce a forum selection clause. First, the court determines whether the forum-selection clause is valid and enforceable. Atl. Marine, 134 S. Ct. at 581. A forum-selection clause is "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." M/S Bremen v. Zapata Off–Shore Co., 407 U.S. 1, 10 (1972). A forum-selection clause may be considered unreasonable if "(1) [its] formation was induced by fraud or over-reaching; (2) the complaining party "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the

---

[1] The Court in Atlantic Marine identified the private and public factors as follows:

> Factors relating to the parties' private interests include "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 241, n.6, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981) (internal quotation marks omitted). Public-interest factors may include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." Ibid. (internal quotation marks omitted). The Court must also give some weight to the plaintiffs' choice of forum. See Norwood v. Kirkpatrick, 349 U.S. 29, 32, 75 S. Ct. 544, 99 L. Ed. 789 (1955).

Atl. Marine, 134 S. Ct. at 581 n.6.

fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4)[its] enforcement would contravene a strong public policy of the forum state." Albemarle Corp., 628 F.3d at 651 (quoting Allen v. Lloyd's of London, 94 F.3d 923, 928 (4th Cir. 1996)).

Second, the court must consider whether "extraordinary circumstances" would hinder the enforcement of the forum-selection clause. Atl. Marine, 134 S. Ct. at 581. In considering whether extraordinary circumstances are present to avoid enforcement of a valid forum selection clause, a court may consider "arguments about public-interest factors only."[2] Id. at 581–82.

## IV. ANALYSIS

A. The Parties' Arguments

1. *Defendant*

Defendant contends that the claims at issue in this action arise from a Master Purchase and Sale Agreement (the "Agreement") allegedly agreed to by the parties on November 14, 2016. (ECF No. 10 at 1 (referencing ECF No. 1-1 at 60–67).) Defendant further contends that the Agreement has the following forum selection clause that requires this action to be litigated in a state or federal court located in the State of Florida:

> Governing Law: Submission to Process and Venue. This Agreement shall be deemed a contract made under the laws of the State of Florida and shall be construed and enforced in accordance with and governed by the internal laws of the State of Florida, without reference to the rules thereof in relation to conflict of law. Seller hereby irrevocably submits itself to the exclusive jurisdiction of the State and Federal courts located in Florida, and agrees and consents that service of process may be made upon it in any legal proceeding relating to this Agreement, the assignment of Purchased or non-Purchased Accounts or any other relationship

---

[2] "The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." Atl. Marine, 134 S. Ct. at 581. "First, the plaintiff's choice of forum merits no weight." Id. "Second, a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests." Atl. Marine, 134 S. Ct. at 582. "Third, when a party bound by a forum-selection clause flouts its contractual obligation and files suit in a different forum, a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations." Atl. Marine, 134 S. Ct. at 582.

> between CFP and Seller by any means allowed under state or federal law. Any legal proceeding arising out of or in any way related to this Agreement, the assignment of Purchased or non-Purchased Accounts or any other relationship between CFP and Seller shall be brought and litigated in the state or federal courts located in the State of Florida and only in a county in which CFP has a business location, the selection of which shall be in the exclusive discretion of CFP. Seller hereby waives and agrees not to assert as a defense or otherwise, that an action brought in accordance with this section was brought in any inconvenient forum or that the venue thereof is improper.

(Id. at 2 (citing ECF No. 1-1 at 63 § 21).) Defendant also contends that the maintenance of the instant action in this court is in breach of the Agreement. (Id.)

Based on the aforementioned, Defendant argues that the court should give the forum selection clause controlling weight because its language is mandatory and transfer the case. (Id. at 8.) Defendant argues that Plaintiff's claims are all subject to the forum selection clause because they arise out of and/or are related to the Agreement. (Id. at 9–10 (citing, e.g., Kentwool Co. v. NetSuite, Inc., C/A No. 6:14-cv-02678, 2014 WL 12681605, at *5 (D.S.C. Dec. 1, 2014) ("Although the clause in this case states 'arising out of or in connection with' the Agreement and not 'arising out of or related to,' the Fourth Circuit has held that '[t]he difference between the phrases 'in connection with' and 'may arise out of or in relation to' is largely semantic.'")).) In addition, Defendant argues there is no evidence of fraud, unfairness or lack of judicial access that would make the enforcement of the forum selection clause unreasonable. (Id. at 10–11.) Finally, Defendant argues that "there are no known public interest concerns that would warrant ignoring the forum selection clause including any administrative difficulties flowing from court congestion" and it instead asserts that the public interest factors actually weigh in favor of transferring the case to Florida. (Id. at 11–12 (citing, e.g., Sagittarius Sporting Goods Co., Ltd v. LG Sourcing, Inc., 162 F. Supp. 3d 531, 536 (D.S.C. 2016) ("The preference of having this diversity case adjudicated in the forum that is much more at home with the [controlling] law . . . [weighs] in favor of transfer.")).)

*2. Plaintiff*

Plaintiff opposes the Motion to Transfer Venue asserting that Defendant's invocation of the forum selection clause is invalid because the Agreement was not "a valid, enforceable, written agreement between the parties." (ECF No. 24 at 1.) Although it does not dispute that the parties signed the Agreement on November 14, 2016, Plaintiff asserts that the Agreement was effectively cancelled when Defendant orally refused to provide factoring services for invoices involving Plaintiff's second biggest customer, Network Controls & Electric, Inc. (See ECF No. 24-1 at 3 ("If CUS could not factor Network Controls' invoices, then there was no use in CUS factoring any invoices with CFP . . . . [CFP's COO] Mr. Palestine also said that, based on this circumstance, CFP could not provide any factoring services to CUS, and that the agreement signed on November 14, 2016 was of no force or effect.").) Plaintiff further asserts that when its circumstances with Network Controls changed, Defendant then agreed on December 9, 2016, to provide factoring services to Plaintiff pursuant to a new factoring agreement, which was never signed by the parties. (ECF No. 12-2 at 3 ¶ 9.) As a result of the foregoing, Plaintiff argues that "[a]ssuming that the November Agreement was canceled, and that Defendant began providing factoring services to Plaintiff in December 2016 without a written agreement—an error that is solely and exclusively Defendant's own fault, then this yields two conclusions: first, that since the forum selection clause upon which Defendant seeks transfer was included in the November Agreement, this clause is not valid or enforceable against Plaintiff; and second, that since Defendant started doing business with Plaintiff in December 2016 without a written agreement, there is no valid forum selection clause that Defendant may utilize to transfer venue for this case to Florida." (ECF No. 24 at 8.) Accordingly, Plaintiff opines that Defendant's Motion to Transfer should be denied "until a decision on the merits of the validity and enforceability of the

November Agreement may be reached."[3]  (Id. at 9 (citations omitted).)

Plaintiff also asserts that the Motion to Transfer should be denied because Defendant waived the right to exercise the forum selection clause when it filed a Third-Party Complaint (ECF No. 20) against Jonathan Carawan, Plaintiff's former president and member, in this court instead of Florida.  (ECF No. 24 at 2.)  Because Carawan was also allegedly subject to the forum selection clause, Plaintiff argues that "Defendant has chosen to act inconsistently with that provision, and this conduct amounts to nothing less than a waiver of its ability to seek enforcement of that clause."  (Id. at 13 (citing Kettler Int'l, Inc. v. Starbucks Corp., 55 F. Supp. 3d 839, 849–51 (E.D. Va. 2014)).)  Plaintiff further argues that by waiving the forum selection clause as to Carawan, the court should consider the relevant public interest factors (i.e., court administration and judicial economy) and deny the transfer and avoid having "the same set of witnesses and the same set of evidence [] presented in two different forums with regard to the same set of issues."  (Id. at 14.)

Finally, Plaintiff moves the court (ECF No. 40) to supplement the record with "(1) a letter dated November 21, 2016, written by Marc Marin, an employee of Defendant, to Plaintiff and its customers evidencing the cancellation of the Factoring Agreement at issue in this dispute, . . . ; and (2) an email dated December 6, 2016, written by Jason Yeaman, an employee of Defendant's, to Plaintiff and one of Plaintiff's customers evidencing that no prior relationship existed between Plaintiff and Defendant . . . ."  (Id. at 1–2.)

B.    The Court's Review

Defendant moves to transfer the matter to the Southern District of Florida, West Palm

---

[3] Plaintiff observes that without the Agreement, "Defendant can only be successful in transferring this case to Florida if it can meet the ordinary analysis established by § 1404(a)." (ECF No. 24 at 10.)  In this regard, Plaintiff asserts that Defendant has not offered any facts and/or argument as to why transfer under § 1404(a) is appropriate. (Id. at 11.)

Beach Division, pursuant to a forum selection clause contained in the purported Agreement between the parties. (ECF No. 10 at 1.) Plaintiff's main argument in opposition to transfer is that the Agreement was terminated by Defendant. Defendant replies that this argument is without merit because the Agreement "was never terminated as required by its terms." (ECF No. 27 at 3.) Defendant expressly cites to the following provisions in support of its position:

> (1) at Section 26, that the "Effective Date" of the Agreement was the date that CUS signed it, i.e., November 14, 2016; (2) at Section 16, that the "Original Term of this Agreement shall be for a period of 6 Months from the Effective Date," after which it is automatically extended for an additional one (1) year period unless written notice of the termination is given by CUS to CFP "at least 60 days, but not more than 90 days, prior to the end of the Original Term…"; (3) at Section 15, that all notices "with respect to this Agreement shall be given in writing," and delivered in a certain manner that expressly did not include email; and, (4) at Section 22, that the Agreement and any written documents executed pursuant thereto constituted the entire agreement of the parties and that the Agreement "may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements of the parties" and "[n]o modification or amendment of or supplement to this Agreement shall be valid or effective unless the same is in writing and signed" by both parties.

(ECF No. 27 at 2 (quoting ECF No. 1-1 at 63 §§ 15–16, 64 § 22 & 65 § 26).) Upon consideration of the parties' positions, their dispute is an issue of contract interpretation.

Under South Carolina law,[4] "'[w]here the contract's language is clear and unambiguous, the language alone determines the contract's force and effect.'" Id. (quoting McGill v. Moore, 672 S.E.2d 571, 574 (S.C. 2009)). "'It is a question of law for the court whether the language of a contract is ambiguous.'" Id. at 710 (quoting S.C. Dep't of Nat. Res. v. Town of McClellanville, 550 S.E.2d 299, 302-03 (S.C. 2001)). "'A contract is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the

---
[4] Because this action is premised on diversity jurisdiction, the interpretation of the Agreement is governed by South Carolina contract law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Vagish, LLC v. Seneca Specialty Ins. Co., Case No. 3:13-cv-03161-TLW, 2014 WL 12638788, at * (D.S.C. July 25, 2014) (citing Erie R.R.).

customs, practices, usages and terminology as generally understood in the particular trade or business.'" Id. (quoting Hawkins v. Greenwood Dev. Corp., 493 S.E.2d 875, 878 (S.C. Ct. App. 1997)). Moreover, "'extrinsic evidence may only be considered if the contract is ambiguous.'" Rodarte v. Univ. of S.C., 2015 WL 4275972, at *5 (S.C. Ct. App. July 15, 2015) (quoting Preserv. Capital Consultants, LLC v. First Am. Title Ins. Co., 751 S.E.2d 256, 261 (S.C. 2013)). "Where a written instrument is unambiguous, parol evidence is inadmissible to ascertain the true intent and meaning of the parties." McGill v. Moore, 672 S.E.2d 571, 576 (S.C. 2009).

Upon review, the court finds that the terms of the Agreement are unambiguous. Therefore, for purposes of the instant Motion, the court concludes that the Agreement was executed by the parties and was not terminated as required by its terms. The foregoing finding resolves Defendant's Motion to Transfer because Plaintiff does not make any arguments suggesting that the forum selection clause was unreasonable under Albemarle Corp. Therefore, the court finds that the forum selection clause in the Agreement is valid and that Plaintiff fails to present exceptional circumstances mandating that the forum selection clause not be given controlling weight.

In addition, the court is not persuaded that Defendant waived implementation of the forum selection clause by filing a counterclaim against Jonathan Carawan. In this regard, the court observes that Defendant expressly states that "[v]enue of this Counterclaim is proper in Palm Beach County, Florida with respect to newly added Counter-Defendant Carawan, pursuant to the individual Limited Guarantee signed by him, . . . ." (ECF No. 20 at 10 ¶ 7.)

Accordingly, this case should be transferred to the Southern District of Florida, West Palm Beach Division, as requested by Defendant.

## V. CONCLUSION

Upon careful consideration of the entire record and for the reasons set forth above, the court hereby **GRANTS** Defendant Commercial Finance Partners, LLC's Motion to Transfer Venue and **TRANSFERS** the matter to the United States District Court for the Southern District of Florida, West Palm Beach Division. (ECF No. 10.) The court further **GRANTS** Plaintiff Carolina Underground Solutions, LLC's Motion to Supplement.[5] (ECF No. 40.) The court **DECLINES** to rule on the remaining pending Motions (ECF Nos. 12, 13 & 45) in this case and leaves resolution of these Motions for the transferee court.

**IT IS SO ORDERED.**

*/s/ J. Michelle Childs*
United States District Judge

September 1, 2017
Columbia, South Carolina

---

[5] Defendant did not oppose the court's review of the supplemental information, instead it chose to argue against its substantive impact. (See ECF No. 48.)